# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELA MOLINA, LETICIA HERNANDEZ, and VERONICA GUTIERREZ, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HUAXCUAXTLA RESTAURANT CORP., EL CERRITO RESTAURANT, COMERCIAL MEXICANA CORP., and NOLBERTO MARTINEZ CRISANTOS and ISABEL ROMERO, in their individual and professional capacities,<br><br>Defendants. | Civil Case No.: 1:20-cv-02481<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Adela Molina, Leticia Hernandez, and Veronica Gutierrez, (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Faruqi & Faruqi, LLP, hereby allege as follows against Defendants Huaxcuaxtla Restaurant Corp. ("Huaxcuaxtla"), El Cerrito Restaurant ("El Cerrito"), Comercial Mexicana Corp. ("Comercial"), Nolberto Martinez Crisantos ("Crisantos"), and Isabel Romero ("Romero") (collectively, "Defendants"):

## NATURE OF THE CLAIMS

1.     Defendants own and operate two restaurants and one deli in the Bronx, New York, named "Huaxcuaxtla Restaurant," "El Cerrito Restaurant," and "Comercial Mexicana" (together, the "Restaurants").

2.     Defendants engage in a common and deliberate policy of consistently compensating Plaintiffs and other similarly situated Restaurant Employees (defined *infra* at ¶ 49) at rates that are drastically below the federal and applicable State minimum wage rates, and ***never***

paying them overtime compensation or spread of hours pay.

3.    Restaurant Employees typically work one of two shifts on any given day: from 8:00 a.m. until approximately 6:00 p.m. or from 6:00 p.m. to approximately 4:00 a.m., but they often stay approximately 15 to 30 minutes past the end of their shifts to clean the Restaurants.

4.    From 2014 through 2017, Defendants consistently paid Restaurant Employees their total hours worked "off the books," in cash, at rates of approximately $3.14 to $4.00 per hour which is well below both the federal and State minimum wage rates.

5.    Starting in 2018, Defendants began paying their employees at rates of approximately $7.50 per hour, which is still well below the State minimum wage rate.

6.    Moreover, Plaintiffs routinely worked 50 to 70 hours per week and were ***never*** paid overtime compensation.

7.    Additionally, Plaintiffs often worked more than 10 hours in a day and never received spread of hours pay.

8.    Defendants have never furnished their employees with any Notices of Pay Rate or accurate wage statements as required by law.

9.    Plaintiffs' claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of themselves and all other similarly situated Restaurant Employees (defined *infra* at ¶ 49) employed by Defendants at any time during the full statute of limitations period.

10.    Plaintiffs' claims are also brought, in part, under the New York Labor Law ("NYLL"), and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated Restaurant

Employees (defined *infra* at ¶ 49) employed by Defendants at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

12.     The Court also has supplemental jurisdiction over Plaintiffs' related claims arising under State law pursuant to 28 U.S.C. § 1367.

13.     Venue is proper under 28 U.S.C. § 1391 because Defendants' principal place of business is located in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

## PARTIES

A.     **Plaintiff Adela Molina**

14.     Plaintiff Adela Molina is a resident of New York City and was employed by Defendants from in or around January 2010 through in or around January 2020, with intermittent periods therein during which she did not work for Defendants.

15.     At all relevant times, Adela Molina was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

B.     **Plaintiff Leticia Hernandez**

16.     Plaintiff Leticia Hernandez is a resident of Pennsylvania and was employed by Defendants from in or around January 2008 through in or around January 2018, with intermittent periods therein during which she did not work for Defendants.

17.      At all relevant times, Leticia Hernandez was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

**C.**      **Plaintiff Veronica Gutierrez**

18.      Plaintiff Veronica Gutierrez is a resident of New York City and was employed by Defendants from in or around May 2014 through in or around May 2019.

19.      At all relevant times, Veronica Gutierrez was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

**D.**      **Defendant Huaxcuaxtla Restaurant Corp.**

20.      Defendant Huaxcuaxtla is a domestic business corporation with its principal place of business located at 605 Courtlandt Avenue, Bronx, NY 10451.

21.      At all relevant times, Huaxcuaxtla controlled and directed the terms of employment and compensation of Plaintiffs.

22.      At all relevant times, Huaxcuaxtla established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs including scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

23.      At all relevant times, Huaxcuaxtla maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs.

24.      At all relevant times, Huaxcuaxtla was an "employer" within the meaning of all applicable statutes and regulations.

**E.**      **Defendant El Cerrito Restaurant**

25.      Defendant El Cerrito is a domestic company with its principal place of business located at 1184 Elder Avenue, Bronx, NY 10472.

26.     At all relevant times, El Cerrito controlled and directed the terms of employment and compensation of Plaintiffs.

27.     At all relevant times, El Cerrito established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs including scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

28.     At all relevant times, El Cerrito maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs.

29.     At all relevant times, El Cerrito was an "employer" within the meaning of all applicable statutes and regulations.

F.     **Defendant Comercial Mexicana Corp.**

30.     Defendant Comercial is a domestic business corporation with its principal place of business located at 1182 Elder Avenue, Bronx, NY 10472.

31.     At all relevant times, Comercial controlled and directed the terms of employment and compensation of Plaintiffs.

32.     At all relevant times, Comercial established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs including scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

33.     At all relevant times, Comercial maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs.

34.     At all relevant times, Comercial was an "employer" within the meaning of all applicable statutes and regulations.

**G.**   **Defendant Nolberto Martinez Crisantos**

35.     Defendant Crisantos is the owner of Huaxcuaxtla, El Cerrito, and Comercial, and a resident of the State of New York.

36.     At all relevant times, Defendant Crisantos controlled and directed the terms of employment and compensation of Plaintiffs and all similarly situated persons.

37.     At all relevant times, Defendant Crisantos maintained and exercised his power to hire, fire, discipline, and promote Plaintiffs and all similarly situated persons.

38.     At all relevant times, Defendant Crisantos maintained control, oversight, and direction of Plaintiffs and all similarly situated persons, including scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

39.     At all relevant times, Defendant Crisantos was an "employer" within the meaning of all applicable statutes and regulations.

**H.**   **Defendant Isabel Romero**

40.     Defendant Romero is a manager of Huaxcuaxtla, El Cerrito, and Comercial, and a resident of the State of New York.

41.     At all relevant times, Defendant Romero controlled and directed the terms of employment and compensation of Plaintiffs and all similarly situated persons.

42.     At all relevant times, Defendant Romero maintained and exercised her power to hire, fire, discipline, and promote Plaintiffs and all similarly situated persons.

43.     At all relevant times, Defendant Romero maintained control, oversight, and direction of Plaintiffs and all similarly situated persons, including scheduling, work allocation,

task supervision, monitoring work product, payroll, and other employment practices that applied to them.

44.     At all relevant times, Defendant Romero was an "employer" within the meaning of all applicable statutes and regulations.

## FACTS

**A.     Background**

45.     Defendants own and operate two Mexican restaurants and one deli in the Bronx, New York, named "Huaxcuaxtla Restaurant," "El Cerrito Restaurant," and "Comercial Mexicana."

46.     Huaxcuaxtla and El Cerrito serve and deliver their food to customers throughout the Bronx.

47.     Comercial Mexicana is a deli that serves food and sells groceries as well as other everyday items to the public.

48.     Upon information and belief, between both restaurants and the deli, Defendants employ a staff of approximately 20 employees at any given time.

49.     Employees of the Restaurants hold various titles, including, *inter alia*: (i) Cook; (ii) Assistant Cook; (iii) Washer; (iv) Delivery Worker; (v) Server; (vi) Busser; and (vii) Cashier (collectively, "Restaurant Employees").

50.     The Restaurant Employees typically work an average of 50 to 70 hours per week, with some working as many as 77 hours per week.

**B.     Failure to Pay Minimum, Overtime, and Spread of Hours Wages**

51.     Defendants engage in a common pattern and practice of deliberately denying Restaurant Employees minimum and overtime wages owed.

52.     Defendants systematically deny Restaurant Employees wages in several ways.

53.     First, Defendants pay all Restaurant Employees at rates that are drastically below the applicable federal and State minimum wage rates during the relevant time period.

54.     This common unlawful compensation scheme is communicated to Restaurant Employees and carried out by Crisantos and Romero directly.

55.     Defendants' practice results in Restaurant Employees being paid well below the applicable federal and State minimum wage for an average of 50 to 70 hours per week.

56.     Second, Defendants *never* pay any of their Restaurant Employees at a rate of one and one-half times the applicable federal and State minimum wage rates for any of their hours worked in excess of 40 hours in a workweek.

57.     In other words, Defendants completely deny all Restaurant Employees, some who work over 70 hours per week, any overtime compensation *at all*.

58.     Third, Defendants do not provide any of their Restaurant Employees with "spread of hours pay" when they work more than 10 hours a day – i.e., an additional hour of pay at the applicable State minimum wage rate on each day where the length of interval between the beginning and end of an employees' work day exceeds 10 hours.

## C.     Failure to Provide Notices of Pay Rate and Accurate Wage Statements

59.     The NYLL requires that Defendants provide the Restaurant Employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business,

and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary[,]" which is commonly referred to as a Notice of Pay Rate.

60.     Throughout the statutory period, Defendants have never provided any of the Restaurant Employees with a Notice of Pay Rate.

61.     The NYLL also requires that Defendants furnish the Restaurant Employees with accurate wage statements with each payment of wages.

62.     Throughout the statutory period, Defendants have never furnished any wage statements at all to any of the Restaurant Employees.

**D.     Plaintiff Adela Molina**

    **i.     Background**

63.     Adela Molina worked at the Restaurants as an Assistant Cook, Delivery Worker, Server, Washer, and Cashier from approximately January 2010 through in or around January 2020.

64.     Some of Ms. Molina's duties as an Assistant Cook, Delivery Worker, Server, Washer, and Cashier included the following: serving food to the Restaurants' customers; cleaning the Restaurants' dining areas, kitchens, and bathrooms; restocking the Restaurants with supplies; managing the cash register; making food deliveries to the Restaurants' customers; answering the Restaurants' phones; and assisting the Cooks in meal preparation.

65.     From approximately January 2014 through December 2015 and January 2017 through December 2017, Ms. Molina generally worked six (6) days a week, from approximately 8:00 a.m. until approximately 6:00 p.m. or from 6:00 p.m. until approximately 4:00 a.m., but often worked an additional 15 to 30 minutes past the end of her shifts cleaning the Restaurants.

66.     During this time, Ms. Molina consistently worked approximately 10 to 10.50 hours per day and approximately 60 to 63 hours per week.

67.     From approximately January 2018 through January 2020, Ms. Molina generally worked five (5) days a week, from approximately 8:00 a.m. until approximately 6:00 p.m. or from 6:00 p.m. until approximately 4:00 a.m., but often worked an additional 15 to 30 minutes past the end of her shifts cleaning the Restaurants.

68.     During this time, Ms. Molina consistently worked approximately 10 to 10.50 hours per day and approximately 50 to 52.50 hours per week.

**ii.     Wage Violations**

69.     Beginning in approximately January 2014, Defendants informed Ms. Molina that they would pay her only $40.00 per day for working approximately 10 to 10.50 hours – amounting to only **$4.00** to **$3.80** per hour – significantly below the federal and the applicable State minimum wage rates.

70.     Indeed, from approximately January 2014 through December 2015 and January 2017 through December 2017, Ms. Molina was paid $240.00 for working six (6) days a week.

71.     This resulted in Ms. Molina being paid well below federal and the applicable State minimum wage rate for as many as 63 hours in a given week.

72.     Ms. Molina was not paid any spread of hours pay for any shifts that she worked which exceeded 10 hours in length.

73.     Further, Ms. Molina was ***never*** paid one and one-half times the applicable State minimum wage rate for any hours worked in excess of 40 hours in a workweek.

74.     By way of example, from August 8, 2017 to August 13, 2017, Ms. Molina worked 60 hours and received $240.00 for all 60 hours worked.

75.     For this week alone, Defendants failed to pay Ms. Molina an additional $420.00 in minimum wages[1] and $110.00 in overtime wages.[2]

76.     Starting in January 2018, Ms. Molina began working five (5) days a week.

77.     Around this time, Defendants also increased her compensation to $75.00 per day for working approximately 10 to 10.50 hours – amounting to only **$7.50** to **$7.14** per hour.

78.     Indeed, starting in January 2018, Ms. Molina was paid $375.00 for working five (5) days a week.

79.     Despite the increased compensation, Defendants continued to deny Ms. Molina compensation at or above the applicable State minimum wage rate and sometimes even the federal minimum wage rate.

80.     Moreover, Defendants continued to withhold spread of hours pay when Ms. Molina worked more than 10 hours per day.

81.     Defendants similarly continued their common policy and scheme to never pay Ms. Molina any overtime compensation for hours worked in excess of 40 hours in a workweek.

82.     By way of example, from May 8, 2018 to May 12, 2018, Ms. Molina worked 50 hours and received $375.00 for all 50 hours worked.

83.     For this week alone, Defendants failed to pay Ms. Molina an additional $275.00 in minimum wages[3] and $65.00 in overtime wages.[4]

84.     Defendants never provided Ms. Molina with a Notice of Pay Rate.

---

[1] 60 hours x $11.00 = $660.00          $660.00 – $240.00 = $420.00

[2] 60 hours – 40 = 20 hours          20 x $5.50 = $110.00

[3] 50 hours x $13.00 = $650.00          $650.00 – $375.00 = $275.00

[4] 50 hours – 40 = 10 hours          10 x $6.50 = $65.00

85.     Defendants never provided Ms. Molina with accurate wage statements.

86.     In fact, Ms. Molina was not provided with any wage statements at all.

87.     Ms. Molina had numerous conversations with other Restaurant Employees throughout the relevant time period, and they have confirmed that Defendants have never furnished a Notice of Pay Rate, or wage statements to any of the Restaurant Employees.

88.     Through her conversations with other Restaurant Employees, Ms. Molina has learned that other Restaurant Employees were paid in a similar manner as herself.

89.     Moreover, on occasion, Ms. Molina personally watched Defendants Crisantos and Romero paying other Restaurant Employees and saw that they were paid in the same manner as herself.

E.     **Plaintiff Leticia Hernandez**

     i.     **Background**

90.     Leticia Hernandez worked at the Restaurants as an Assistant Cook, Delivery Worker, Server, Washer, and Cashier from approximately January 2008 through in or around January 12, 2018, with intermittent periods therein during which she did not work for Defendants.

91.     Some of Ms. Hernandez's duties as an Assistant Cook, Delivery Worker, Server, Washer, and Cashier included the following: serving food to the Restaurants' customers; cleaning the Restaurants' dining areas, kitchens, and bathrooms; restocking the Restaurants with supplies; managing the cash register; making food deliveries to the Restaurants' customers; answering the Restaurants' phones; and assisting the Cooks in meal preparation.

92.     From approximately June 2014 through December 2016, Ms. Hernandez generally worked six (6) to seven (7) days a week from approximately 6:00 p.m. until approximately 4:30 a.m., but often worked until 5:00 a.m. cleaning the Restaurants.

93.     During this time, Ms. Hernandez consistently worked approximately 10.50 to 11 hours per day and approximately 63 to 77 hours per week.

94.     On several occasions, Ms. Hernandez worked this schedule for *entire* months without taking a day off.

95.     From approximately January 2017 through January 2018, Ms. Hernandez generally worked four (4) to five (5) days a week, from approximately 6:00 p.m. until approximately 4:30 a.m., but often worked until 5:00 a.m. cleaning the Restaurants.

96.     During this time, Ms. Hernandez consistently worked approximately 10.50 to 11 hours per day and approximately 42 to 55 hours per week.

**ii.     Wage Violations**

97.     Beginning in approximately June 2014, Defendants informed Ms. Hernandez that they would pay her only $40.00 per day for working approximately 10.50 to 11 hours – amounting to only **$3.80** to **$3.63** per hour – significantly below the federal and the applicable State minimum wage rates.

98.     Indeed, from approximately June 2014 through December 2016, Ms. Hernandez was paid $240.00 for working six (6) days a week or $280.00 for working seven (7) days a week.

99.     This resulted in Ms. Hernandez being paid well below federal and the applicable State minimum wage rates for as many as 77 hours in a given week.

100.     Ms. Hernandez was not paid any spread of hours pay for any shifts that she worked which exceeded 10 hours in length.

101.     Further, Ms. Hernandez was *never* paid one and one-half times the applicable State minimum wage rate for any hours worked in excess of 40 hours in a workweek.

102.    By way of example, from December 5, 2016 to December 11, 2016, Ms. Hernandez worked five 10.50-hour shifts and two 11-hour shifts for a total of 74.5 hours.

103.    For this week alone, Defendants failed to pay Ms. Hernandez an additional $390.50 in minimum wages,[5] $155.25 in overtime wages, [6] and $63.00 in spread of hours wages.[7]

104.    Starting in January 2018, Ms. Hernandez began working two (2) to three (3) days a week.

105.    Around this time, Defendants also increased her compensation to $75.00 per day, for working approximately 10.50 to 11 hours per day – amounting to only **$7.14** to **$6.81** per hour.

106.    Indeed, in January 2018, Ms. Hernandez was paid $150.00 for working two (2) days a week or $225.00 for working three (3) days a week.

107.     Despite the increased compensation, Defendants continued to deny Ms. Hernandez compensation at or above federal and the applicable State minimum wage rates.

108.    Moreover, Defendants continued to withhold spread of hours pay when Ms. Hernandez worked more than 10 hours per day.

109.    Fed up with Defendants' failure to properly pay her, Ms. Hernandez terminated her employment with Defendants in or around January 12, 2018.

110.    Defendants never provided Ms. Hernandez with a Notice of Pay Rate.

111.    Defendants never provided Ms. Hernandez with accurate wage statements.

112.    In fact, Ms. Hernandez was not provided with any wage statements at all.

---

[5] 74.5 hours x $9.00 = $670.50          $670.50 – $280.00 = $390.50

[6] 74.5 hours – 40 = 34.5 hours          34.5 x $4.50 = $155.25

[7] 7 x $9.00 = $63.00

113.    Ms. Hernandez had numerous conversations with other Restaurant Employees throughout the relevant time period, and they have confirmed that Defendants have never furnished a Notice of Pay Rate, or wage statements to any of the Restaurant Employees.

114.    Through her conversations with other Restaurant Employees, Ms. Hernandez has learned that other Restaurant Employees were paid in a similar manner as herself.

**F.    Plaintiff Veronica Gutierrez**

**i.    Background**

115.    Veronica Gutierrez worked at the Restaurants as a Server, Delivery Worker, Washer, and Cashier from approximately May 2014 through in or around May 2019.

116.    Some of Ms. Gutierrez's duties as a Server, Delivery Worker, Washer, and Cashier included the following: serving food to the Restaurants' customers; cleaning the Restaurants' dining areas, kitchens, and bathrooms; restocking the Restaurants with supplies; managing the cash register; making food deliveries to the Restaurants' customers; and answering the Restaurants' phones.

117.    From approximately May 2014 through December 2016, Ms. Gutierrez generally worked five (5) to six (6) days a week, from approximately 8:00 a.m. until approximately 6:00 p.m., but often worked an additional 15 to 30 minutes past the end of her shifts cleaning the Restaurants.

118.    During this time, Ms. Gutierrez consistently worked approximately 10 to 10.50 hours per day and approximately 50 to 63 hours per week.

119.    From approximately January 2017 through December 2018, Ms. Gutierrez generally worked five (5) days a week, from approximately 8:00 a.m. until approximately 6:00

p.m., but often worked an additional 15 to 30 minutes past the end of her shifts cleaning the Restaurants.

120.    During this time, Ms. Gutierrez consistently worked approximately 10 to 10.50 hours per day and approximately 50 to 52.50 hours every week.

121.    From approximately January 2019 through May 2019, Ms. Gutierrez worked three (3) days a week, from approximately 8:00 a.m. until approximately 6:00 p.m., but often worked an additional 15 to 30 minutes past the end of her shifts cleaning the Restaurants.

122.    During this time, Ms. Gutierrez consistently worked approximately 10 to 10.50 hours per day and approximately 30 to 31.50 hours per week.

**ii.    Wage Violations**

123.     Beginning in approximately May 2014 through December 2015, Defendants informed Ms. Gutierrez that they would pay her only $33.00 per day for working approximately 10 to 10.50 hours per day – amounting to only **$3.30** to **$3.14** per hour – significantly below the federal and the applicable State minimum wage rates.

124.    Indeed, from approximately May 2014 through December 2015, Ms. Gutierrez was paid $165.00 for working five (5) days a week or $198.00 for working six (6) days a week.

125.    This resulted in Ms. Gutierrez being paid well below federal and the applicable State minimum wage rate for as many as 63 hours in a given week.

126.    Ms. Gutierrez was not paid any spread of hours pay for any shifts that she worked which exceeded 10 hours in length.

127.    Further, Ms. Gutierrez was ***never*** paid one and one-half times the applicable State minimum wage rate for any hours worked in excess of 40 hours in a workweek.

128.    By way of example, from March 3, 2015 to March 8, 2015, Ms. Gutierrez worked 60 hours and received $198.00 for all hours worked.

129.    For this week alone, Defendants failed to pay Ms. Gutierrez an additional $327.00 in minimum wages[8] and $87.40 in overtime wages.[9]

130.    Starting in January 2016, Defendants increased Ms. Gutierrez's compensation to $40.00 per day for working approximately 10 to 10.50 hours per day – amounting to **$4.00** to **$3.80** per hour.

131.    Indeed, starting in January 2016 through December 2017, Ms. Gutierrez was paid $200.00 for working five (5) days a week or $240.00 for working six (6) days a week.

132.    Despite the increased compensation, Defendants continued to deny Ms. Gutierrez compensation at or above the applicable State minimum wage rate.

133.    Moreover, Defendants continued to withhold spread of hours pay when Ms. Gutierrez worked more than 10 hours per day.

134.    Defendants similarly continued their common policy and scheme to never pay Ms. Gutierrez any overtime compensation for hours worked in excess of 40 hours in a workweek.

135.    By way of example, from September 12, 2016 to September 17, 2016, Ms. Gutierrez worked 60 hours and received $240.00 for all 60 hours worked.

136.    For this week alone, Defendants failed to pay Ms. Gutierrez an additional $300.00 in minimum wages[10] and $90.00 in overtime wages.[11]

---

[8] 60 hours x $8.75 = $525.00          $525.00 – $198.00 = $327.00

[9] 60 hours – 40 = 20 hours          20 x $4.37 = $87.40

[10] 60 hours x $9.00 = $540.00          $540.00 – $240.00 = $300.00

[11] 60 hours – 40 = 20 hours          20 x $4.50 = $90.00

137.    Starting in January 2018, Ms. Gutierrez began working five (5) days a week.

138.    Around this time, Defendants also increased her compensation to $75.00 per day for working approximately 10 to 10.50 hours per day – amounting to only **$7.50** to **$7.14** per hour.

139.    Indeed, starting in January 2018, Ms. Gutierrez was paid $375.00 for working five (5) days a week.

140.    Despite the increased compensation, Defendants continued to deny Ms. Gutierrez compensation at or above the applicable State minimum wage rate and sometimes even the federal minimum wage rate.

141.    Moreover, Defendants continued to withhold spread of hours pay when Ms. Gutierrez worked more than 10 hours per day.

142.    Defendants similarly continued their common policy and scheme to never pay Ms. Gutierrez any overtime compensation for hours worked in excess of 40 hours in a workweek.

143.    Fed up with Defendants' failure to properly pay her, Ms. Gutierrez terminated her employment with Defendants in or around May 2019.

144.    Defendants never provided Ms. Gutierrez with a Notice of Pay Rate.

145.    Defendants never provided Ms. Gutierrez with accurate wage statements.

146.    In fact, Ms. Gutierrez was not provided with any wage statements at all.

147.    Ms. Gutierrez had numerous conversations with other Restaurant Employees throughout the relevant time period, and they have confirmed that Defendants have never furnished a Notice of Pay Rate, or wage statements to any of the Restaurant Employees.

148.    Through her conversations with other Restaurant Employees, Ms. Gutierrez has learned that other Restaurant Employees were paid in a similar manner as herself.

149.    Moreover, on occasion, Ms. Gutierrez personally watched Defendants Crisantos

and Romero paying other Restaurant Employees and saw that they were paid in the same manner as she was.

## FLSA COLLECTIVE ACTION ALLEGATIONS

150.    Plaintiffs bring this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

151.    Plaintiffs seek to maintain claims, pursuant to FLSA § 216(b), on behalf of themselves and all other Restaurant Employees who have been employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

152.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and scheme, and were subject to Defendants' practices of: (i) failing to compensate Plaintiffs and the FLSA Collective at the federal minimum wage; and (ii) failing to compensate Plaintiffs and the FLSA Collective at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

153.    Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

154.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

155.    As a result of Defendants' conduct, they are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid wages with interest, an additional equal amount as

liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

156.     While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 50 other similarly situated persons who were employed by Defendants during the full statute of limitations period.

157.     Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

158.     Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants during the full statute of limitations period, along with their last known addresses, telephone numbers, and email addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS – NYLL CLASS

159.     Plaintiffs bring this action, in part, as a class action under the NYLL and applicable regulations thereunder.

### A.    Class Definition

160.     Plaintiffs seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and a class of all other Restaurant Employees who have been employed by Defendants as, *inter alia*, Cooks, Assistant Cooks, Washers, Delivery Workers, Servers, Bussers, and Cashiers, during the full statute of limitations period (the "NYLL Class").

161.     Plaintiffs allege, on behalf of themselves and the NYLL Class, that Defendants violated, *inter alia*, the NYLL by: (i) failing to compensate Plaintiffs and the NYLL Class at the

applicable State minimum wage for all hours worked in a workweek; (ii) failing to compensate Plaintiffs and the NYLL Class at one and one-half times their regular rate of pay (or the applicable State minimum wage) for all hours worked in excess of 40 hours in a workweek; (iii) failing to compensate Plaintiffs and the NYLL Class "spread of hours" pay for shifts in excess of 10 hours in a day; (iv) failing to provide Notices of Pay Rate; and (v) failing to furnish accurate wage statements.

162.    Plaintiffs and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

163.    The wage practices described in this Complaint are part of Defendants' normal course of conduct.

164.    The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.    Requirements of Rule 23(a)**

**i.    Numerosity and Impracticability of Joinder**

165.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

166.    While the exact number of the members of the NYLL Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately 100 members of the NYLL Class.

167.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**ii.    Common Questions of Law and Fact**

168.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class and predominate over any questions only

affecting the members of the NYLL Class individually.

169.    Indeed, there are few, purely individual issues in this action.

170.    The questions of law and fact that are common to Plaintiffs and the NYLL Class include, but are not limited to:

(a)    Whether Defendants failed to pay Plaintiffs and the NYLL Class all minimum wages owed to them;

(b)    Whether Defendants failed to pay Plaintiffs and the NYLL Class all overtime compensation owed to them;

(c)    Whether Defendants failed to pay Plaintiffs and the NYLL all wages on days where their shifts exceeded 10 hours;

(d)    Whether Defendants failed to provide Plaintiffs and the NYLL Class with Notices of Pay Rate;

(e)    Whether Defendants failed to furnish accurate wage statements to Plaintiffs and the NYLL Class; and

(f)    Whether Plaintiffs and the NYLL Class are entitled to liquidated damages and injunctive relief.

171.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**iii.    Typicality of Claims and Relief Sought**

172.    Plaintiffs' claims are typical of the claims of the members of the NYLL Class they seek to represent.

173.    Plaintiffs and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

174.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are

sadly typical of Defendants' treatment of their Restaurant Employees generally, and of the NYLL Class specifically.

175.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**iv.    Adequacy of Representation**

176.    Plaintiffs will fairly and adequately protect the interests of the NYLL Class because their interests are coextensive and aligned with those of the members of the NYLL Class.

177.    Plaintiffs have no interests adverse to the NYLL Class they seek to represent and have retained competent and experienced counsel.

178.    Plaintiffs are willing and able to represent the NYLL Class as fairly and vigorously as they pursue their similar individual claims.

179.    Plaintiffs have retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

180.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**C.    Requirements of Rule 23(b)(1)**

181.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

182.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the NYLL Class, and Defendants.

183.     By filing this Complaint, Plaintiffs are preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

184.     Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class's ability to protect their interests.

**D.     Requirements of Rule 23(b)(2)**

185.     Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the NYLL Class by denying Plaintiffs and the NYLL Class minimum and overtime wages, failing to pay spread of hours compensation, and failing to furnish Notice of Pay Rate and accurate wage statements.

186.     These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the NYLL Class as a whole.

187.     Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, minimum and overtime wages, spread of hours compensation, Notices of Pay Rate and accurate wage statements.

188.     Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs' and the NYLL Class's entitlement to monetary and non-monetary remedies for such wage violations.

189.     Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**E.     Requirements of Rule 23(b)(3)**

190.     The common issues of fact and law affecting Plaintiffs' claims and those of the NYLL Class – including, without limitation, the common issues identified in the paragraphs above – predominate over issues affecting only individual claims.

191.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the NYLL Class.

192.    The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the NYLL Class to pursue their claims individually.

193.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Restaurant Employees during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE**
*(On Behalf of Plaintiffs and the FLSA Collective)*

194.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

195.    During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

196.    The FLSA requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less than the federal minimum wage for all hours worked under 40 hours in a workweek.

197.    Plaintiffs and the FLSA Collective were not exempt from the requirement that their employer pay them minimum wages under the FLSA, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

198.     From March 2014 to March 2017, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked under 40 hours in a workweek.

199.     As a result of Defendants' failure to compensate Plaintiffs and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the FLSA.

200.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA and/or applicable regulations thereunder.

201.     Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME
### (*On Behalf of Plaintiffs and the FLSA Collective*)

202.     Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

203.     During the full statutory period, Plaintiffs and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

204.     The FLSA requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less than one and one-half times their regular rate of pay and at a rate not less than one and one-half times the federal minimum wage for all hours worked in excess of 40 hours in a workweek.

205.     Plaintiffs and the FLSA Collective were not exempt from the requirement that Defendants pay them overtime under the FLSA, and they are entitled to be paid overtime by

Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

206.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the FLSA Collective at a rate not less one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

207.    As a result of Defendants' failure to compensate Plaintiffs and the FLSA Collective at a rate not less one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

208.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

209.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE
#### (*On Behalf of Plaintiffs and the NYLL Class*)

210.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

211.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

212.    The NYLL requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less than the applicable State minimum wage for all hours

worked under 40 hours in a workweek.

213.     Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

214.     Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek.

215.     As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable State minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

216.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

217.     Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME WAGES**
(***On Behalf of Plaintiffs and the NYLL Class***)

218.     Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

219.     During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

220.    The NYLL requires covered employers, including Defendants, to compensate Restaurant Employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek and at a rate not less than one and one-half times the applicable State minimum wage for all hours worked in excess of 40 hours in a workweek.

221.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

222.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

223.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

224.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

225.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PROVIDE NOTICES OF PAY RATE**
(*On Behalf of Plaintiffs and the NYLL Class*)

226.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

227.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

228.    The NYLL requires covered employers, including Defendants, to provide Restaurant Employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing Restaurant as' names used by the employer;  the physical address of the employer's main office or principal place of Restaurant, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

229.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

230.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the NYLL Class.

231.    As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

232.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiffs and the NYLL Class in accordance with the NYLL.

233.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO FURNISH ACCURATE**
**WAGE STATEMENTS**
***(On Behalf of Plaintiffs and the NYLL Class)***

234.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

235.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, as well as all applicable regulations thereunder.

236.    The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

237.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with proper wage statements.

238.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiffs and the

NYLL Class.

239.    As a result of Defendants' failure to furnish accurate wage statements to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL § 195.

240.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to furnish proper wage statements to Plaintiffs and the NYLL Class in accordance with the NYLL.

241.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: SPREAD OF HOURS PAY**
**(*On Behalf of Plaintiffs and the NYLL Class*)**

242.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

243.    During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.,* and 650, *et seq.*, as well as all applicable regulations thereunder, including, without limitation, the Hospitality Industry Wage Order, 12 N.Y.C.R.R. § 146-1.1, *et seq*.

244.    The NYLL and/or applicable regulations thereunder require employers, including Defendants, to furnish each of their employees one additional hour of pay at the basic minimum wage rate on each day during which the length of the interval between the beginning and end of the employee's work day, or "spread of hours," exceeds 10 hours.

245.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with spread of hours pay.

246.     Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide spread of hours pay to Plaintiffs and the NYLL Class.

247.     As a result of Defendants' failure to furnish spread of hours pay to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, the NYLL and/or applicable regulations thereunder.

248.     Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, respectfully request that this Court:

A.     Declare that the practices complained of herein are unlawful under applicable federal and State law;

B.     Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.     Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the NYLL Class, including all

last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.   Designate Plaintiffs, Adela Molina, Leticia Hernandez, and Veronica Gutierrez as the representatives of the NYLL Class, and their counsel of record as class counsel;

F.   Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.   Determine the damages sustained by Plaintiffs and the NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.   Award Plaintiffs, the FLSA Collective, and the NYLL Class an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

I.   Award Plaintiffs, the FLSA Collective, and/or the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

J.   Grant Plaintiffs, the FLSA Collective, and/or the NYLL Class such other and further relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, hereby demand a trial by jury on all issues of fact and damages.

Dated: March 20, 2020          **FARUQI & FARUQI, LLP**

By:  _/s/ Innessa M. Huot_
     Innessa Melamed Huot
     Patrick J. Collopy
     Camilo M. Burr (not yet admitted)
     685 Third Avenue, 26th Floor
     New York, New York 10017
     Tel: 212-983-9330
     Fax: 212-983-9331
        ihuot@faruqilaw.com
        pcollopy@faruqilaw.com
        cburr@faruqilaw.com

     *Attorneys for Plaintiffs, the Proposed FLSA*
     *Collective, and the Proposed NYLL Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELA MOLINA, LETICIA HERNANDEZ, and VERONICA GUTIERREZ, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HUAXCUAXTLA RESTAURANT CORP., EL CERRITO RESTAURANT, COMERCIAL MEXICANA CORP., and NOLBERTO MARTINEZ CRISTANOS and ISABEL ROMERO, in their individual and professional capacities,<br><br>Defendants. | Civil Case No.: 1:20-cv-02481<br><br>**CONSENT TO SUE** |

I, Leticia Hernandez, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Molina, et al. v. Huaxcuaxtla Restaurant Corp., et al.*, pending in the United States Court for the Southern District of New York. I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Leticia Hernandez

Signature: *Leticia Hernandez*
DocuSigned by:
DFDF831E2E70468...

Date: 3/19/2020 | 8:50 PM EDT

DocuSign Envelope ID: 34DC2B15-C9AB-43F2-9191-A95F31AC2E80

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELA MOLINA, LETICIA HERNANDEZ, and VERONICA GUTIERREZ, on behalf of themselves and others similarly situated, | Civil Case No.: 1:20-cv-02481 |
| Plaintiffs, | **CONSENT TO SUE** |
| v. | |
| HUAXCUAXTLA RESTAURANT CORP., EL CERRITO RESTAURANT, COMERCIAL MEXICANA CORP., and NOLBERTO MARTINEZ CRISTANOS and ISABEL ROMERO, in their individual and professional capacities, | |
| Defendants. | |

I, Adela Molina, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Molina, et al. v. Huaxcuaxtla Restaurant Corp., et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Adela Molina

Signature:

Date: 3/11/2020 | 5:21 PM EDT

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADELA MOLINA, LETICIA HERNANDEZ, and VERONICA GUTIERREZ, on behalf of themselves and others similarly situated, | Civil Case No.: 1:20-cv-02481 |
| | **CONSENT TO SUE** |
| Plaintiffs, | |
| v. | |
| HUAXCUAXTLA RESTAURANT CORP., EL CERRITO RESTAURANT, COMERCIAL MEXICANA CORP., and NOLBERTO MARTINEZ CRISTANOS and ISABEL ROMERO, in their individual and professional capacities, | |
| Defendants. | |

I, Veronica Gutierrez, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Molina, et al. v. Huaxcuaxtla Restaurant Corp., et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

Name (Print): Verónica Carolina Gutierrez

Signature: _VCG_

Date: 3/20/2020 | 1:58 PM EDT